## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| | : | |
| **v.** | : | |
| | : | **Case No. 1:23-MJ-00034** |
| | : | |
| **KENDRID KHALIL HAMLIN,** | : | |
| | : | |
| **Defendant.** | : | |

## GOVERNMENT'S MEMORANDUM IN SUPPORT OF PRE-TRIAL DETENTION

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum in support of its oral motion that the defendant be detained pending trial pursuant to 18 U.S.C. § 3142(f)(2)(A). There is a serious risk that the defendant will flee prosecution. As demonstrated below, the government can show by a preponderance of the evidence that there are no conditions or combination of conditions that can reasonably assure the appearance of the defendant. 18 U.S.C. § 3142(f)(2)(A). The defendant is charged with Assault on a Member of Congress in violation of 18 U.S.C. § 351(e) and has a significant history of failing to appear at court hearings for past convictions.

The government requests that the following points and authorities, as well as any other facts, arguments and authorities presented at the detention hearing, are considered in the Court's determination regarding pre-trial detention.

## I. Procedural History

The defendant is charged by federal Complaint with felony Assault on a Member of Congress where personal injury resulted, in violation of Title 18 U.S.C. § 351(e). At the defendant's initial appearance in U.S. District Court, the government intends to move for detention

pending trial and to request a three-day continuance before the detention hearing. 18 U.S.C. § 3142(f)(2)(A).

## II. Legal Authority and Argument

Under the Bail Reform Act ("BRA"), 18 U.S.C. §§ 3141–3156, a detention hearing must be held at the government's request if the defendant poses a serious risk of flight. *Id*. at § 3142(f)(2)(A).

The BRA provides that a judicial officer "shall order the detention of the [defendant] before trial," *id*. § 3142(e)(1), if, after a detention hearing held under 18 U.S.C. § 3142(f), and upon consideration of "the available information concerning" enumerated factors, *id*. § 3142(g), "the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community," *id*. § 3142(e)(1). "In common parlance, the relevant inquiry is whether the defendant is a 'flight risk' or a 'danger to the community.'" *United States v. Vasquez-Benitez,* 919 F.3d 546, 550 (D.C. Cir. 2019). As a threshold matter, the government must demonstrate by a preponderance of the evidence that the defendant is a serious risk of flight were he to be released. *United States v. Anderson*, 177 F. Supp. 3d 458, 466 (D.D.C. 2016) (citing *United States v. Xulam,* 84 F.3d 441, 443 (D.C. Cir. 1996). In assessing whether pretrial detention or release is warranted, the judicial officer must "take into account the available information concerning" the following four factors: (1) "the nature and circumstances of the offense charged, including whether the offense is a crime of violence"; (2) "the weight of the evidence against the person"; (3) "the history and characteristics of the person, including . . . the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community

ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings"; and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g). At the detention hearing, both the government and the defendant may offer evidence or proceed by proffer. *United States v. Smith*, 79 F.3d 1208, 1209–10 (D.C. Cir. 1996) (per curiam).

At the hearing, the "rules concerning the admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the [detention] hearing." 18 U.S.C. § 3142(f). Specifically, the presentation of hearsay evidence is permitted. *Id.*; *United States v. Smith*, 79 F.3d 1208, 1210 (D.C. Cir. 1996). Moreover, the government is not required to "spell out in precise detail how the government will prove its case at trial, nor specify exactly what sources it will use." *United States v. Martir*, 782 F.2d 1141, 1145 (2d Cir. 1986); *United States v. Williams*, 798 F. Supp. 34, 36 (D.D.C. 1992). A pretrial detention hearing should not be used as a discovery device and cross-examination should be limited to the disputed issues, since the detention hearing is not to be turned into a mini-trial and is not to be used as a subterfuge to obtain discovery. *Smith*, 79 F.3d at 1210, *see also Williams*, 798 F. Supp. at 36.

A review and understanding of the facts and circumstances in this case should allow the Court to conclude that there is no condition or combination of conditions that would assure appearance of the defendant in court. *See* 18 U.S.C. § 3142(e)(1).

A.   <u>Nature and Circumstances of the Offense Charged</u>

 On the morning of Thursday, February 9, 2023, the defendant entered a building vestibule around 4:30 am, in the 300 Block of H Street, Northeast, in Washington, D.C. With him, he had a bicycle and some bags of clothing. He was unable to gain access to the lobby of the building, and

he proceeded to remove his shoes and defecate in the building's small vestibule area. He remained in the vestibule until he was able to gain access to the lobby after the door was opened to allow another person to exit the building. Once inside, at approximately 6:00 am, the defendant remained in the lobby area, generally pacing around. During the hour or so he was in the lobby, he put on a white surgical mask and removed his shoes.

Around 7:10 a.m., Representative Angie Craig, a Member of Congress representing the Second Congressional District of the State of Minnesota, entered the lobby of the apartment complex. After getting coffee in the lobby of the apartment building, she noticed an unknown individual pacing in the lobby. The Representative did not recognize the defendant, but stated "good morning" to him.[1]

The Representative then proceeded to enter the service elevator with her coffee, swiping her building access card and selecting a floor of the building. Before the doors closed, the defendant stuck his arm between the door, preventing the door from closing, and stepped inside the elevator with the Representative. The defendant told the Representative that he needed to go to the bathroom, and that he was coming to her apartment. The Representative advised the defendant that he could not do so.   In response, the defendant became agitated. The defendant stood in front of the elevator door, blocking the Representative from exiting the elevator, and hit buttons on the keypad. When the Representative tried to move past the defendant, he punched her on the left side of her face, striking the chin/mouth area with his closed fist. The defendant then

---

[1] The text of 18 U.S.C. § 351(h) states: "In a prosecution for an offense under this section the Government need not prove that the defendant knew that the victim of the offense was an individual protected by this section."   Thus, the defendant's knowledge that the Representative was a Member of Congress is not necessary for him to be in violation of the statute.

moved behind the Representative, placing his hand on her shoulders to keep her from reaching the elevator keypad. The defendant also grabbed the Representative's collar bone, near her neck. At this point, the Representative threw a cup of hot coffee over her shoulder at the defendant, at which point the defendant released her. As the doors opened on a floor, the Representative exited and began to yell for help. The defendant exited the elevator and ran down the stairs to exit the building. During the assault, the defendant caused the Representative to suffer personal injuries, including a visible abrasion on her lip, small amounts of bleeding on her lip, and physical pain from where the defendant struck her with his closed fist.

At 7:14 am, the defendant was recorded by the building's video surveillance camera escaping out by using a back-alley door. Before leaving, he put his shoes back on and rode his bike out of the building to flee.

As a result of a call to emergency services, officers from the Metropolitan Police Department (MPD) responded to the scene. The Representative provided law enforcement a description of the defendant, and law enforcement officers reviewed and collected surveillance video footage from the building's managers. The Representative described her assailant as an African-American male wearing no shoes, a white hospital mask and grey sweatpants with a distinctive black marking on them. She also told officers he had a scar or mark on his cheek. Officers obtained footage of the defendant in the building, and made still-image photos which identified his shoes, his blue underwear, the grey sweatpants, black vest, black coat, and distinctive mark on his cheek which were distributed to law enforcement. The mark on his cheek is indicated by a red circle added to Figure 1 below. The black marking on his grey sweatpants is indicated by a red circle added to Figure 2 below. The blue underwear and shoes are each indicated by a red

circle added to Figure 3 below.



*Figure 1 – Still from Surveillance*



*Figure 2 – Still from Surveillance*



*Figure 3 – Still from Surveillance*

A review of additional surveillance footage shows the defendant after he took off his shoes, put on the white mask, and removed his jacket – wearing a black hooded vest and white t-shirt, as shown in Figure 4 below.



*Figure 4- Still from Surveillance*

7

After the initial assault, officers assigned to the U.S. Capitol Police and MPD then canvassed the local area, including public transportation nodes, looking for a suspect who matched the description from the still-images. Around 4:50 pm, as law enforcement agents were driving in Washington DC, they noticed a man sitting on the sidewalk area of a road who matched the description of the individual who assaulted the Representative. Their location, near the intersection of D St. NW and 2nd St. NW, was less than a mile from the building where the assault occurred. The man sitting on the sidewalk had on the same grey sweatpants with a distinctive black marking, the same black shoes, and the same vest as in the still photos provided, and he was sitting on the black jacket. The officers also noticed that the hair line of the suspect matched the hair line from the still image from the building video. As they looked at him closer, they also noted he had the same facial scar. The black marking on the grey sweatpants and shoes are indicated with a red circle in Figure 5 below and the scar is indicated with a red arrow. In addition, he can be seen wearing the same black hooded vest and white t-shirt visible in Figure 4 above.



*Figure 5- Still from Body Worn Camera Footage*

As shown in the below, the defendant later put on the jacket he had been sitting on, matching the jacket visible in Figure 2 above.



*Figure 6- Still from Body Worn Camera Footage*

Similarly, as shown below, the defendant was wearing bright blue underwear that matches Figure 3 above.



*Figure 7- Still from Body Worn Camera Footage*

When they observed him, they noticed he was acting erratically. Officers approached him and asked him if he was okay. As the officers began talking to the suspect, he told police his name was Kendrid Hamlin. At one point in the conversation, he told the officers that something was crawling all over his arms. The officers attempted to place him under arrest. During this attempt, the defendant fought the officers – including kicking one officer and biting a detective.

Taken together, the nature and circumstances of the assault upon the Representative and the subsequent actions upon the defendant's arrest, strongly weigh in favor of detention. The defendant assaulted a woman in a building, taking advantage of the isolation afforded by a closed elevator. He punched the Representative with enough force to cause bleeding, an abrasion, and bruising. He also prevented her from signaling for help or escaping the elevator by grabbing her neck area and collar bone. Notably, he only ended the assault when the Representative was able to escape the elevator by throwing hot coffee on him. By biting and kicking the arresting officers, the defendant has further demonstrated not only his willingness to engage in aggressive and violent behavior that harms others, but also his strong desire to evade punishment. By this, the defendant has shown himself to be a danger to the community and that he will take action to avoid the legal process against him. If convicted, the defendant faces up to 10 years imprisonment, as the assault caused personal injury, 18 U.S.C. § 351(e), significantly adding to the likelihood that he will flee.

### B.     Weight of the Evidence Against the Defendant

The second factor to be considered, the weight of the evidence, also demonstrates the necessity for detention. The evidence against the defendant is very strong. The defendant was identified on video immediately prior to and after the assault. At his arrest and as demonstrated

below, he was wearing the exact same clothing – including the grey pants with the distinctive black markings, white socks pulled up above his ankles, black hooded vest, black Nike shoes, bright blue underwear, and white t-shirt.   He also had the same black jacket (which he was sitting on when police found him).

In addition to having the same build, complexion and hair style, he can further be identified conclusively as the assailant by the distinctive scarring on his cheek.   The weight of the evidence against the defendant, including the video evidence, strongly argues in favor of detention pending trial.[2]

### C.       The Defendant's History and Characteristics

The third factor, the history and characteristics of the person, also weighs heavily in favor of detention because the defendant's history clearly demonstrates he is a flight risk. The defendant, who is 27 years old, has a criminal history that dates to 2014 including 25 bench warrants for failing to appear for court appearances or failing to adhere to conditions of parole or supervised release. In addition, he has twelve previous convictions, several of them involving assaultive conduct.

According to the defendant's most recent pre-trial report by the Pretrial Services Agency for the District of Columbia, the defendant's twelve prior criminal convictions include:

- a conviction for Assault on a Police Officer in Washington, DC on December 15, 2022;

- a conviction for Lewd, Indecent, or Obscene Acts in Washington, DC on December 15,

---

[2] As discussed at length in a recent opinion by Chief Judge Howell, the "weight of the evidence should not automatically be weighed less than the remaining statutory pretrial detention factors." *United States v. Blackson*, No. 23-cr-25 (BAH), 2023 U.S. Dist. LEXIS 18988, at *25 (D.D.C. Feb. 6, 2023).

2022;

- a conviction for Second Degree Assault in Montgomery County, MD, on May 6, 2021;

- a conviction for Disorderly Conduct in Rockville, MD on June 21, 2022;

- a conviction for Robbery in Montgomery County, MD on November 29, 2021;

- a conviction for False Identification in Hanover County, VA on July 12, 2017;

- a conviction for False Identification in Hanover County, VA on July 5, 2017;

- a conviction for Simple Assault in Washington, DC on October 13, 2017;

- a conviction for Attempted Possession of a Controlled Substance (Synthetic Marijuana), in Washington DC on December 5, 2016;

- a conviction for Theft Second Degree and Unlawful Entry in Washington DC on December 5, 2016;

- a conviction for Attempt to Commit Robbery in Washington, DC on May 1, 2017; and

- a conviction for Petit Larceny in Arlington County on January 7, 2015.

In addition, available records show that the defendant has 24 bench warrants relating to failing to appear at D.C. Superior Court hearings, ranging from September 2015 until as recently as November 2, 2022. In addition, a court in Maryland issued at least one more bench warrant in August of 2022, after the defendant became a loss of contact with supervision and failed to appear for a show cause hearing.

Indeed, a timeline of the defendant's most recent failures to appear for court appearances this fall in four different criminal cases provide overwhelming evidence of his risk of flight – as it demonstrates a stark pattern of failing to appear in multiple cases. Essentially, from August of 2022 through December of 2022, in all of his pending matters he failed to voluntarily appear for

every single hearing, including sentencing hearings. In each case, the defendant only appeared after either being arrested on a bench warrant or being arrested in another matter.   Specifically:

-   On August 25, 2022, the defendant failed to appear for a probation show cause hearing after becoming a loss of contact in his Montgomery County matter, 1D00415787, where he faces a suspended sentence of 16 months – a bench warrant was issued.

-   On September 3, 2022, the defendant was arrested and charged for lewd or obscene acts in case 2022 CDC 5198.  He was released with notice to appear for an initial appearance on October 12, 2022.

-   On September 21, 2022, the defendant was arrested and charged with second degree theft in case 2022 CMD 5583.   He was released after receiving notice to appear for an initial status on October 26, 2022.

-   On September 26, 2022 and October 11, 2022 – pretrial filed notices of non-compliance with the court in 2022 CDC 5198.

-   On October 12, 2022, the defendant failed to appear for his initial status hearing in 2022 CDC 5198 – a bench warrant was issued.

-   On October 19, 2022, pretrial filed notice of non-compliance with the court in 2022 CMD 5583.

-   On October 20, 2022, the defendant was arrested on the bench warrant from 2022 CDC 5198.

-   On October 26, 2022, the defendant pled guilty in 2022 CDC 5198 and signed notice to appear for sentencing a week later on Nov. 2, 2022.

-   That same day, the defendant was released in 2022 CMD 5583 and agreed to appear

13

before the court on November 2, 2022.

- On November 2, 2022, the defendant failed to appear for sentencing in 2022 CDC 5198 – a bench warrant was issued.

- On that same day, the defendant failed to appear for his status in 2022 CMD 5583 – a bench warrant was issued.

- On November 21, 2022, in case 2022 CMD 6906, the defendant was arrested on four counts of Assault on a Police Officer.   He was also arrested on the outstanding bench warrants in 2022 CMD 5583 and 2022 CDC 5198.   The defendant was thereafter held in 2022 CMD 5583, with a cash bond in the other matters, until the matters were resolved pursuant to a plea agreement.

The defendant is also reported to be experiencing housing insecurity, and the circumstances of the case demonstrate that he is essentially living on the street.   Thus, his current living circumstance is not conducive to monitoring or another such condition that would ensure his future appearances at court proceedings. He is reportedly without employment or a stable living situation that would lead to a strong tie for him to remain in the community while he undergoes the legal process for this case. His criminal history, combined with his frequent, repeated and undeterred failures to appear at court hearings support a very clear finding that he is a serious risk of flight, well above the required standard of preponderance of the evidence.

This factor also supports this Court finding that by a preponderance of the evidence that there are no conditions or combination of conditions that will ensure his appearance at future court hearings. The clearest inference from the defendant's history is that he will not abide by any restrictions the court places on him and will abscond from the judicial process. His bench warrants

for failing to appear cover every year from 2015 to the present.   This third factor similarly strongly weighs in favor of detention.

### D.   **Danger to the Community**

The fourth factor, the nature and seriousness of the danger to any person or the community posed by the defendant's release, also weighs in favor of detention. Notwithstanding the very serious nature of the charged assault and his actions during the arrest, the defendant's criminal history shows he is a danger to the community. He was convicted of his most recent assault charge less than two months before the present case. His three prior convictions for assault prevent any inference or suggestion that he is a peaceful, non-aggressive person. The willingness to assault a stranger in an elevator with physical blows from a closed fist and biting a police officer during an arrest show what would be the defendant's likely conduct if released – a threat and danger to the community. This fourth factor similarly weighs in favor of detention.   As a result, the government contends he should be detained pending trial.

### III. **Conclusion**

In examining the four factors, it is clear that all four support the Court finding by a preponderance of the evidence that there are no conditions or combination of conditions that will ensure his appearance at future court hearings, and that he should be detained. Therefore, the government respectfully requests that the Court issue an Order granting its motion that the defendant be held without bond pending trial.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY

15

_/s/ Alexander R. Schneider_
Alexander R. Schneider
Michigan Bar #P71467
Special Assistant United States Attorney
601 D Street, N.W.
Washington, DC 20579
Phone:   (202) 252-7124
Email:   alexander.schneider@usdoj.gov