UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | : |
| | : |
| | : |
| v. | : |
| | : Case No. 1:23-MJ-00034 |
| | : |
| **KENDRID KHALIL HAMLIN,** | : |
| | : |
| **Defendant.** | : |

### GOVERNMENT'S RESPONSE TO DEFENSE MOTION AND MEMORANDUM FOR PRETRIAL RELEASE

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this response to the defense motion seeking pretrial release. As explained in the Government's Memorandum in Support of Pretrial Detention, at Dkt. 5, there is a serious risk that the defendant will flee prosecution. The defense motion and memorandum fail to address this risk of flight. There continue to be no conditions or combination of conditions that can reasonably assure the appearance of the defendant. 18 U.S.C. § 3142(f)(2)(A).

The government requests that the following points and authorities, the entirety of the Government's Memorandum for Detention at Dtk. 5, as well as any other facts, arguments and authorities presented at the detention hearing, are considered in the Court's determination regarding pretrial detention.

First, Mr. Hamlin has a long history of fleeing from court hearings, evading pretrial supervision, missing sentencing hearings, and failing to comply with probation ordered mental health and drug abuse treatment. If released, his record suggests that he will not return to Court

1

until arrested—possibly for another crime. Second, the defense's proposed placement at Samaritan Inns is inappropriate because he does not meet the necessary conditions for entering that program. Third, even if Mr. Hamlin met the conditions, Mr. Hamlin's prior actions in failing while on supervision by specialized supervision units and GPS monitoring, combined with his actions towards corrections officers and police indicating he likely would represent a danger to the staff at Samaritans Inn, make such placement inappropriate.

## I. <u>Procedural History</u>

The defendant was charged on February 10th, 2023, by federal Complaint with felony Assault on a Member of Congress where personal injury resulted, in violation of Title 18 U.S.C. § 351(e). At the defendant's initial appearance in U.S. District Court on February 13th, 2023, the government moved for detention pending trial under 18 U.S.C. § 3142(f)(2)(A). On February 16th, the defense filed a Motion to Vacate Detention Hearing stating that "Mr. Hamlin does not contest pretrial detention at this time." Dkt. 9 at 2. On the same day the order was granted. On March 17th, the defense filed a motion to seek release from pretrial detention. Dkt. 19.

## II. <u>Legal Authority and Argument</u>

Under the Bail Reform Act ("BRA"), 18 U.S.C. §§ 3141–3156, a detention hearing must be held at the government's request if the defendant poses a serious risk of flight. *Id*. at § 3142(f)(2)(A).

The BRA provides that a judicial officer "shall order the detention of the [defendant] before trial," *id*. § 3142(e)(1), if, after a detention hearing held under 18 U.S.C. § 3142(f), and upon consideration of "the available information concerning" enumerated factors, *id.* § 3142(g), "the judicial officer finds that no condition or combination of conditions will reasonably assure the

appearance of the person as required and the safety of any other person and the community," *id*. § 3142(e)(1). "In common parlance, the relevant inquiry is whether the defendant is a 'flight risk' or a 'danger to the community.'" *United States v. Vasquez-Benitez,* 919 F.3d 546, 550 (D.C. Cir. 2019). As a threshold matter, the government must demonstrate by a preponderance of the evidence that the defendant is a serious risk of flight were he to be released. *United States v. Anderson*, 177 F. Supp. 3d 458, 466 (D.D.C. 2016) (citing *United States v. Xulam,* 84 F.3d 441, 443 (D.C. Cir. 1996)). In assessing whether pretrial detention or release is warranted, the judicial officer must "take into account the available information concerning" the following four factors: (1) "the nature and circumstances of the offense charged, including whether the offense is a crime of violence"; (2) "the weight of the evidence against the person"; (3) "the history and characteristics of the person, including . . . the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings"; and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g). At the detention hearing, both the government and the defendant may offer evidence or proceed by proffer. *United States v. Smith*, 79 F.3d 1208, 1209–10 (D.C. Cir. 1996) (per curiam).

At the hearing, the "rules concerning the admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the [detention] hearing." 18 U.S.C. § 3142(f). Specifically, the presentation of hearsay evidence is permitted. *Id*.; *United States v. Smith*, 79 F.3d 1208, 1210 (D.C. Cir. 1996). Moreover, the government is not required to "spell out in precise detail how the government will prove its case at trial, nor specify exactly what sources it

will use." *United States v. Martir*, 782 F.2d 1141, 1145 (2d Cir. 1986); *United States v. Williams*, 798 F. Supp. 34, 36 (D.D.C. 1992). A pretrial detention hearing should not be used as a discovery device and cross-examination should be limited to the disputed issues, since the detention hearing is not to be turned into a mini-trial and is not to be used as a subterfuge to obtain discovery. *Smith*, 79 F.3d at 1210, *see also Williams*, 798 F. Supp. at 36.

A review and understanding of the facts and circumstances in this case should demonstrate that there is are no conditions or combination of conditions that would assure appearance of the defendant in court. *See* 18 U.S.C. § 3142(e)(1).

### A. Nature and Circumstances of the Offense Charged

The Government's Memorandum in Support of Pretrial Detention, at Dkt. 5, pages 3-10 contain a detailed factual description of the nature of the offenses charged in this case, especially the facts leading up to the assault in the elevator and the assault itself. The government disagrees with the characterization of the assault from the defense's proffer, implying that there was a struggle over leaving the elevator and in that struggle, the Representative suffered injuries. Dtk. 19 at 2. The government proffers that if this case were to go to trial, the government would establish that this was an unprovoked, violent assault. Mr. Hamlin hit the Representative with a closed fist after becoming angry that she would not take him to her apartment. He held, detained, and restrained the Representative—preventing her from reaching the emergency buttons on the elevators to stop the elevator from moving or open the elevator doors. Furthermore, the government contends that the injuries Representative suffered satisfy the statutory threshold of "personal injury" that meet the statutory enhancement in § 351(e).

### B. Weight of the Evidence Against the Defendant

In their motion, the defense states that "the weight of the evidence is the *least* important factor for the Court to consider." Dkt. 9 at 7. However, both then Chief Judge Howell and the Second Circuit have recently dismissed that contention. *See United States v. Zhang*, 55 F.4th 141, 152 (2d Cir. 2022); *United States v. Michael Blackson*, No. 23-CR-25 (BAH), 2023 U.S. Dist. LEXIS 18988, at *25 (D.D.C. 2023). Adding a hierarchy between the factors, "impermissibly reads a new requirement into § 3142(g) that Congress did not intend nor imply in the clear text of the statute." *Id*. at 25-26. The court should instead examine all factors, giving them the weight they are due for the particular case. *Blackson*, 2023 U.S. Dist. LEXIS at *25. At a detention hearing, when a court assesses the weight of the evidence, it is looking into not only the strength of the evidence of the defendant's guilt, but also to the weight of the evidence of the defendant's risk of flight or dangerousness. *Id*. at 27-28. *See United States v. Hunt*, 240 F. Supp. 3d 128, 134 (D.D.C. 2017), *United States v. Jones*, 2020 U.S. Dist. LEXIS 78148, at *7 (D.D.C. 2020).

The government contends that the weight of the evidence demonstrates the necessity for detention. Where, like here, "the evidence against a defendant is overwhelming, credible, helpful, and important to the government's case in chief, that may increase the risk that defendant will flee to avoid future court proceedings and may indicate that the defendant is a present danger to himself or the community if the government's allegations later prove to be true." *Blackson*, 2023 U.S. Dist. LEXIS at *25. Similarly, the weight of the evidence of the defendant's consistent pattern of failing to appear for court hearings also demonstrates a clear risk that he will not return to court in this case. This factor thus weighs heavily in favor of detention.

    C.    **The Defendant's History and Characteristics**

*1. The Defendant's History of Failing to Appear, Bench Warrants, and Committing Further Crime.*

5

Of the four factors, the history and characteristics of the defendant weighs most heavily in favor of detention. A third of the defendant's twelve previous convictions include violent behavior – including assaults (MD matter 1D00415787, D.C. matters 2022-CMD-06906, 2016-CMD-018853), robbery and attempted robbery (MD matter 138720C and D.C. Matter 2015CF3009721), and a home invasion that pleaded out to unlawful entry and second-degree theft (D.C. matter 2015CF318179). As outlined in the government's memorandum in aid of sentencing in three of those matters, the defendant's criminal actions have already left a devastating wake in his path. The Government's Memorandum In Aid of Sentencing is attached as Exhibit A. For instance, his actions in the home invasion led to the victim moving out of the District entirely, as she no longer felt safe in this city.  The attempted robbery involved a co-conspirator shooting the victim while the two attempted to steal his bicycle – with the victim later being forced to leave his job due the injury he sustained.

Defendant's claim that his criminal history is "petty", Dkt. 19 at 8, is clearly unsupported by the facts of his prior convictions – these are not parking or traffic offenses, they are criminal actions perpetrated against real victims.  Moreover, in addition to his convictions for violent conduct, he has at least nine prior additional arrests for violent or threatening conduct where the cases were either no papered or dismissed as part of plea agreements.

With respect to risk of flight, a timeline of the defendant's performance under pretrial or posttrial supervision since 2015 paints an alarming picture. Courts have afforded the defendant numerous opportunities for pretrial release. Courts have tried High Intensity Supervision, GPS monitoring, and the Specialized Supervision Unit,[1] but the result is always the same—the

---

1 The Specialized Supervision Unit is a unit of the D.C. Pretrial Services Agency that "provides

defendant either bench warrants or violates his conditions. The following history is based on electronic court records in D.C. Superior Court and records from pretrial services:

| Date | Action |
|---|---|
| 7/20/2015 | Charged with Assault with a Dangerous Weapon in Case 2015-CF3-009721 |
| 7/27/2015 | Placed into High Intensity Supervision Program at Halfway House. |
| 8/31/2015 | Show cause order filed; defendant failed to comply with conditions |
| 9/09/2015 | Bench Warrant Issued |
| 9/30/2015 | While still on supervision in Case 2015-CF3-009721, arrested for Distr. Controlled Substances in Case 2015-CF2-018183; Bench Warrant Executed |
| 10/1/2015 | Released in Specialized Supervision Unit, with order to attend mental health services |
| 10/21/2015 | Defendant late for court appearance, admonished |
| 12/31/2015 | While still on supervision in Case 2015-CF3-009721 and 2015-CF2-018183, arrested for Burglary (2nd Degree) in case 2015-CF3-18179, Held without bond |
| 1/26/2016 | Defense files motion to release, stating that defendant "poses no flight risk" is eligible for specialized supervision unit and would "benefit greatly from participating in their services." Case 2015-CF2-018183, Motion for Modification of Release Conditions Filed Attorney, filed on 1/26/2016. |
| 1/29/2016 | Defendant released into High Intensity Supervision Program, with an order to maintain mental health services as ordered by pretrial services. |
| 2/12/2016 | Order to show cause issued for failing to comply with conditions. |
| 2/15/2016 | While still on supervision in Case 2015-CF3-009721, 2015-CF2-018183, and 2015-CF3-18179, arrested for Destruction of Property in Case 2016-CMD-2170, defendant arrested for destroying glass on the counter of a restaurant in DC after becoming angry |

---

specialized services and supervision to defendants with mental illness, mild mental retardation and/or co-occurring substance use and mental health disorders." *See* https://www.psa.gov/?q=programs/defendent_supervision (last visited Mar. 21, 2023).

| | |
|---|---|
| 2/19/2016 | Held without Bond in case 2015-CF3-18179 |
| 3/15/2016 | Released into Specialized Supervision Unit with conditions to maintain mental health services and drug program attendance |
| 3/16/2016 | Order to show cause issued for failing to comply with conditions. |
| 3/17/2016 | Bench Warrant Issued |
| 5/27/2016 | Bench Warrant Executed, Held without Bond |
| 7/28/2016 | Order for competency evaluation, admitted to St. Elizabeth's for competency evaluation. |
| 8/30/2016 | Defendant found competent, Held without Bond |
| 9/30/2016 | Guilty plea in cases 2015-CF3-9721, 2015-CF2-18183, 2015-CF3-18179, Held without Bond |
| 11/17/2016 | While pending sentencing in 2015-CF3-9721, 2015-CF2-18183, and 2015-CF3-18179, charged with Assault on a Police Officer (Corrections Officer), simple assault in Case 2016-CMD-018853, based on the defendant throwing human feces and urine on a corrections officer, striking the officer on the shirt and pants with the feces and urine |
| 12/05/2016 | Sentencing in cases 2015-CF3-9721, 2015-CF2-18183, 2015-CF3-18179, sentenced to 180 days, all but 105 days suspended, 18 months of probation |
| 12/31/2016 | Released from jail from sentence, on post-conviction probation |
| 1/19/2017 | Show cause order filed; defendant failed to comply with conditions, Failure to Appear, Bench Warrant Issued |
| 1/23/2017 | Bench Warrant Return hearing, released on conditions |
| 2/13/2017 | Show cause order filed; defendant failed to comply with conditions including GPS Tampering charge |
| 2/17/2017 | Failure to Appear, Bench Warrant issued |
| 3/9/2017 | Bench Warrant Returned Executed, Held without Bond |
| 4/14/2017 | Released on personal recognizance for hearing on 4/28/2017 |
| 4/28/2018 | Failure to Appear, Bench Warrant Issued |

| Date | Event |
|---|---|
| 5/1/2017 | Probation Terminated as Unsuccessful in 2015-CF3-18179, Probation Revoked in 2015-CF3-9721. |
| 5/09/2017 | Failure to Appear, Bench Warrant Issued |
| 5/30/2017 | Arrested in Hannover, VA for False Identify to Law Enforcement. GC17009010 |
| 7/25/2017 | Failure to appear at status hearing in 2016-CMD-18853, Bench Warrant Issued |
| 7/26/2017 | Charged with Bail Reform Act violation in case 2017-CMD-12772 |
| 7/28/2017 | Plead guilty to 2016-CMD-18853, Sentenced to probation |
| 9/11/2017 | Order to show cause on probation violations |
| 10/6/2017 | Failure to Appear Bench Warrant issued |
| 10/7/2017 | Bench Warrant Returned Executed, Held without Bond |
| 10/13/2017 | Probation Revoked, sentenced to 60 days |
| 11/29/2017 | Resentenced in 2015-CF3-9721 to 12 months by Parole commission for violating supervised release, in custody |
| 11/28/2018 | Released from custody |
| 12/29/2018 | Charged with fraud in Maryland (4E00498348) |
| 1/28/2019 | Arrested for Possession with intent to Distribute (No Papered) |
| 3/14/2019 | Arrested for Possession (No Papered) |
| 7/13/2019 | Arrested for Simple Assault x3 and fleeing, 2019-CMD-9298, released on personal recognizance |
| 8/9/2019 | Notice of Non-Compliance filed in case 2019-CMD-9298 |
| 9/12/2019 | Notice of Non-Compliance filed in case 2019-CMD-9298 |
| 9/13/2019 | Bench Warrant Issued |
| 11/15/2019 | While on pretrial release in 2019-CMD-9298, arrested and charged with assault in 2019-CMD-14579, held for competency screening |
| 11/22/2019 | Found competent and released |

| | |
|---|---|
| 12/9/2019 | Failure to Appear, Bench Warrant Issued |
| 2/14/2020 | Bench Warrant Executed, charged with Bail Reform Action violations in 2020-CMD-2004, released into Specialized Supervision Unit |
| 3/04/2020 | Release revoked due to non-compliance |
| 3/6/2020 | Motion for Release Granted |
| 3/9/2020 | Failure to Appear, Bench Warrant Issued |
| 3/23/2020 | Defendant Arrested on Bench Warrant, released |
| 3/23/2020 | While on pretrial release in 2019-CMD-9298 and 2020-CMD-2004, arrested in charged with 2nd Degree Assault in Maryland ID00415787, held in MD |
| 5/21/2021 | Pleads guilty to assault in Maryland case 1D00415787, sentenced to 18 months with 16 months suspended |
| 7/6/2021 | While on supervision in Maryland case 1D00415787 and pretrial release in 2019-CMD-9298 and 2020-CMD-2004, arrested for armed robbery in Maryland case 138720C |
| 11/29/2021 | Pleads guilty to robbery in Maryland, sentenced to 12 months |
| 2/18/2022 | Released from Custody in Maryland |
| 4/27/2022 | While on supervision in Maryland case 1D00415787 and pretrial release in 2019-CMD-9298 and 2020-CMD-2004, arrested in MD for disorderly conduct and assault, held without bond |
| 6/21/2022 | Pleads guilty to disorderly conduct and sentenced to time served |
| 8/25/2022 | Fails to appear for a probation show cause hearing after becoming a loss of contact in his Montgomery County matter, 1D00415787, where he faces a suspended sentence of 16 months – a bench warrant was issued. |
| 9/3/2022 | While on supervision in Maryland case 1D00415787, arrested for lewd and indecent Acts 2022-CDC-005198, released on personal recognizance |
| 9/21/2022 | While on supervision in Maryland case 1D00415787 and pretrial release in 2022-CDC-005198, arrested in case 2022-CMD-5583 theft 2nd degree, released on personal recognizance |
| 10/12/2022 | Failure to appear, bench warrant issued |

| | |
|---|---|
| 10/18/2022 | Arrested for shoplifting (no papered), Bench Warrant Executed, Held without Bond |
| 10/26/2022 | Pleads guilty in 2022-CMD-005583, sentencing scheduled for 11/2/2022, released |
| 10/26/2022 | Pleads guilty in 2022-CDC-5198, sentencing scheduled for 11/2/2022, released |
| 11/2/2022 | Failure to Appear at Sentencing in both 2022-CMD-005583 and 2022-CDC-5198, Bench Warrant issued |
| 11/21/2022 | Arrested and charged with 4 counts of Assault on Police officer, 2022-CMD 6906, Held without Bond in 2022-CMD-005583 |
| 12/15/2022 | Pleads guilty, sentenced to 35 days in 2022-CMD-6906, 2 days in 2022 CDC-005198 |
| 12/21/2022 | Released from custody |
| 2/09/2023 | Arrested in present case. |

The defendant's last seven and a half years in the criminal justice system tell the story of a revolving door of release and re-arrest. Courts have tried every tool available short of detention. But no matter the intensity of supervision, no matter if the defendant is placed on GPS monitoring, no matter if he is placed on special supervision specifically designed for individuals with mental health concerns, the defendant will abscond. Worse still, he only returns to court when he is arrested either on a bench warrant or when arrested after committing another offense. The only significant amount of time in the last seven years when Mr. Hamlin has not violated pretrial release is during his one year in custody between November 2017 to November 2018.

His most recent failures to appear for court appearances this Fall in four different criminal cases alone provide overwhelming evidence of his risk of flight. Essentially, from August of 2022 through December of 2022, he failed to voluntarily appear for every single hearing in every single matter, including sentencing hearings. In each case, the defendant only appeared after either being

11

arrested on a bench warrant or being arrested for another crime.

The arguments made on behalf of the defendant that he "poses no flight risk" and is eligible for specialized supervision unit and would "benefit greatly from participating in their services" including mental health and drug abuse treatment have been made repeatedly since 2016. *See* Defense Motion for Modification of Release Conditions, filed on 1/26/2016 in D.C. Superior Court, Case 2015-CF2-018183. Mr. Hamlin's defense attorneys argued that he poses no flight risk – only for him to miss the next court hearings. Mr. Hamlin's defense attorneys argued that he will benefit from pretrial supervision programs – only for him to fail to take advantages of those services, leading to an order to show cause on probation violations, hearings which Mr. Hamlin does not attend, leading to bench warrants, and rearrests. The defendant has been given chance after chance after chance. Each time, however, the defendant has failed to come to court and to follow his conditions of release. It is very foreseeable that this exact patten will repeat itself again. Time and time again, he and his counsel have made representations to the court about appearing for hearings, only for the defendant to fail to show up until he is arrested. The proof is seen in the defendant's 25 prior bench warrants.

## 2. *Samaritan Inns Is Not Suitable for the Defendant*

In their motion, the defense suggests release into the Samaritan Inns. However, a review of their impatient programs demonstrates that in order to qualify for their program, an individual must "have six months proven sobriety, a dedication to a drug/alcohol-free environment, commitment to community living, a secured sponsor, and the ability to pay rent." *Samaritan Inns, Long Term Recovery Program,* https://www.samaritaninns.org/program/ltr/ (last visited Mar. 21, 2023). Mr. Hamlin meets none of these five qualifications. The program also requires the applicant

to have a "police clearance." It is difficult to see how the defendant would qualify for a police clearance when he is pending charges for assaulting a member of congress in federal court. It is also difficult to imagine the defendant cleared by police with his history of assaulting police officers. The defense motion makes no mention of how the defendant would qualify for this program, when he appears to not meet the definition, and there is no affidavit or representation from a director of the Samaritan Inns indicating they would waive their programs requirements to accept an individual with the defendant's violent past, apparent mental health concerns, and his on-going drug addiction. Nothing would stop the defendant from failing to charge his GPS monitoring device and walking out of Samaritan Inns. His history demonstrates he would do exactly that.

*3. Studies into the Abstract Statistical Case are not Applicable to this Defendant*

In their motion, the defense cites the negative impact of incarceration on the defendant because of the inadequacy of mental health treatment and substance abuse treatment available in the DC jail. Dtk. 19 at 9. However, Mr. Hamlin's history has in fact demonstrated the opposite - that release enables him to commit further crime and fail to appear for court appearances and does nothing to improve either his mental health or substance abuse. His past actions in failing to abide by conditions in specialized supervision, also demonstrate a history of unwillingness to participate in such programs.

The studies cited by the defense are also not relevant to Mr. Hamlin's history and characteristics. The defense sites a study that concludes "99% of released federal defendants nationwide appeared for court as required and 98% did not commit new crimes on bond." Dkt. 19 at 11. While this may be true for the abstract statistical case, this Court is required to examine the

history and characteristics of *this* defendant. Mr. Hamlin is squarely in both the 1% that fails to appear and in the 2% who commit crimes on release. The contention that he is not, simply flies in the face of his 7-year history. Also, why it may be true in the abstract statistical case that GPS monitoring and support from pretrial services assists in reducing noncompliance in the abstract case, again this argument simply cannot attach to Mr. Hamlin who has so repeatedly broken conditions involving GPS monitoring and intensive pretrial supervision.

### *4. Controlling Legal Authority Supports Detention*

The defense cites *United States v. Abrahams* for the proposition that the risk of flight in a particular case must rise to the level of an extreme or unusual case, in order for detention to be warranted. 575 F.2d 3, 8 (1st Cir. 1978). First, *Abrahams* pre-dated the enactment of current version of the Bail Reform Act in 1984 and is therefore not applicable.  Under the current version of the Bail Reform Act, "when the government seeks pretrial detention of an individual on the ground that he poses a risk of flight, the standard it must satisfy is a 'preponderance of the evidence.'" United States v. Xulam, 84 F.3d 441, 442 (D.C. Cir. 1996) (internal citation omitted). Second, if anything, *Abrahams* simply emphasizes that even under a higher (inapplicable) standard – the defendant's abysmal history of failing to appear in court, combined with his criminal history and pattern of committing violations while on supervision, would still be qualify for detention.  In *Abrahams*, under the old statutory scheme for detention, the First Circuit upheld a decision to detain a defendant who had three previous convictions in both federal and state courts, was an escaped state prisoner from New Jersey, gave false information at the previous bail hearing, failed to appear two times, used aliases in the past, and transferred money to a foreign country. *Id*. at 4. The defendant here exceeds the risk of flight compared to the defendant in *Abrahams*. Mr. Hamlin

has *12* previous convictions, has a conviction for providing false identification to law enforcement officers, has absconded from multiple jurisdictions, has *25* bench warrants for failures to appear, and committed the present crime while on post-conviction supervision. As the court concluded in *Abrahams*, "There is nothing in the record that suggests that bail will result in his appearance at trial. Every indication is to the contrary." *Id. at 8*.

Controlling authority in this jurisdiction analyzing the statutory scheme currently in place provides ample support for detention in this case.

In *United States v. Munchel,* the D.C Circuit stated when determining release on conditions, the court can inquire "whether [the court] believes the defendant will actually abide by its conditions when making the release determination in the first instance." 991 F.3d 1273, 1281 (D.C. Cir. 2021). And the D.C. Circuit has repeatedly emphasized that risk of flight as turns on a defendant-specific analysis of the defendant's history of appearing at court. *See United States v. Xulam*, 84 F.3d 441, 443 (D.C. Cir. 1996). In other words, "there can be no better evidence bearing on whether the defendant will appear when required than whether he has appeared when required in the past and has been faithful to the conditions of his conditional release, probation, or parole." *United States v. Battle*, 59F.Supp.2d 17, 20 (D.D.C. 1999); *see also United States v. Anderson*, 177 F. Supp. 3d 458, 466 (D.D.C. 2016) (citing prior acts of absconding from a halfway house and a failure to appear conviction as sufficient grounds to demonstrate risk of flight). To ignore the defendant's repeated failure to appear in court and his numerous convictions for crimes committed while on conditional release for older cases is "to disregard the most useful information available." *Battle*, 59 F.Supp.2d at 20.

This history and characteristics of the defendant strongly demonstrate, well over the

preponderance of the evidence standard, that there are no conditions or combination of conditions that will ensure his appearance at future court hearings. The clearest inference from the defendant's history is that he will not abide by any restrictions the court places on him and will abscond from the judicial process.

### D. Danger to the Community

The fourth factor, the nature and seriousness of the danger to any person or the community posed by the defendant's release, also weighs in favor of detention. The defendant is not someone who just fails to show up for court. When he is in the community, regardless of whether he is under pretrial supervision or on probation, he commits crimes. These include robberies, burglaries, and numerous assaults. As evidenced by the defendant's prior assault of a corrections officer, placing the defendant on "home arrest" at the Samaritan Inns puts the staff there at risk. Moreover, it is not a locked facility, and the defendant's history provides no assurance that GPS monitoring would deter him from walking out, especially after multiple failures to appear despite being placed on GPS monitoring.

Simply put, placing the defendant in the community even under the highest supervision is too great a risk. Mr. Hamlin is clearly undeterred by supervision or his prior criminal convictions for assault. He was released from his sentence for his most recent assault charge less than two months before the present case. His criminal history, including three prior convictions for assault foreclose any inference or suggestion that he is a peaceful, non-aggressive person. The willingness to assault a stranger in an elevator with physical blows from a closed fist and biting police officers during an arrest or 1 hour later at a hospital where he was receiving treatment, show what would be the defendant's likely conduct if released—a threat and danger to the community. This fourth

16

factor similarly weighs in favor of detention and negates any possibility that his placement at Samaritan Inns alleviates the risk of danger to the community. As a result, the defendant should be detained pending trial.

### III. Conclusion

In examining the four factors, it is clear that all four support the Court finding by a preponderance of the evidence that there are no conditions or combination of conditions that will ensure his appearance at future court hearings, and that he should be detained. Therefore, the government respectfully requests that the Court issue an Order denying the defense motion that the defendant be released, and that he be held pending trial.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY


*/s/ Alexander R. Schneider*
Alexander R. Schneider
Michigan Bar #P71467
Special Assistant United States Attorney
Joshua Gold
Tx. Bar # 24103101
Assistant United States Attorney
601 D Street, N.W.
Washington, DC 20579
Phone: (202) 252-7124
Email: alexander.schneider@usdoj.gov