Filed
D.C. Superior Court
11/30/2016 17:27PM
Clerk of the Court

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
CRIMINAL DIVISION

| | | | |
|---|---|---|---|
| UNITED STATES OF AMERICA | ) | Criminal Nos.: | 2015 CF3 9721 |
| | ) | | 2015 CF3 18179 |
| v. | ) | | 2015 CF2 18183 |
| | ) | | |
| KENDRID HAMLIN | ) | Calendar: | Judge Edelman |
| | ) | Sentencing Date: | Nov. 30, 2016 |

### GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

The United States, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this Memorandum in Aid of Sentencing for defendant Kendrid Hamlin (the "defendant"). In support of its request, the United States submits the following:

### FACTUAL SUMMARY OF THE OFFENSES

#### Case 2015 CF3 18179

On or about April 9, 2015, complaining witness ▮▮▮▮ returned home to find that someone had broken into her home located ▮▮▮▮ Washington, DC and had stolen her laptop. Investigation showed that the defendant had entered the home and had taken a laptop belonging to ▮▮▮▮ while she and her family were not home. Defendant Hamlin did not have permission to enter ▮▮▮▮, nor to take property from ▮▮▮▮.

#### Case 2015 CF2 18183

On or about December 30, 2015, at approximately 2:08 p.m., Kendrid Hamlin was found to be in possession of nine self-rolled cigarettes containing synthetic cannabinoids inside of a cigarillo packet by officers with the Metropolitan Police Department, who were conducting a buy/bust operation in the area of 11th and G Streets, NW, Washington, DC.

1

### Case 2015 CF2 18183

On or about July 20, 2015, at approximately 3:30 a.m., complaining witness ▬▬ was walking his bicycle uphill in the area of Benning Rd., NE, and Minnesota Ave., NE., Washington, DC. Defendant Kendrid Hamlin approached the complaining witness and reached toward the bicycle, intending to take the bicycle from ▬▬ immediate possession.

Notably, an unknown suspect who was with defendant Hamlin during the commission of this offense pulled out a handgun and shot ▬▬ in his upper leg/buttocks. While the defendant did not plead guilty to any armed offense, nor does the government allege that the defendant shot the victim, the government would note the significant injury ▬▬ encountered as a result of this incident.

### VICTIM IMPACT

In case 2015 CF3 18179, the defendant unlawfully entered victim ▬▬ home and stole property from her home. ▬▬ was not able to give a victim impact statement in person at the sentencing hearing, but she did want the court to know how the defendant's actions affected her. She felt violated, unsafe, and did not want to live in her home or neighborhood any longer after this incident occurred. ▬▬ noted that her home had been burglarized several times during the period that she owned the home, and that the April 9, 2015 incident only further disrupted any sense of security that she felt at home. Due to other circumstances in ▬▬ life, she and her children have moved away from ▬▬. However, in choosing a new location to live, ▬▬ determined that is was not safe for her or her family to continue living in Washington, DC due to the number of times her home had been burglarized.

2

She and her family now live out of the jurisdiction. Clearly, the defendant's actions have had such an impact on ▇▇▇▇▇ that she no longer feels safe living in the nation's capital.

In case 2015 CF3 9721, the government has made efforts to reach the complaining witness, ▇▇▇▇▇, regarding a victim impact statement, but has not yet been able to make contact with him. Should the government make contact with ▇▇▇▇▇ prior to the sentencing hearing, the government will supplement its allocution orally at the hearing. The government would note that doctors were not able to remove the bullet from ▇▇▇▇▇ body, and he continued feeling pain long after the offense occurred. In addition, he lost his job as a construction worker because he was unable to continue to use a jackhammer. He also does not go outside when it is cold or raining because his leg does not function properly in that type of weather. Moreover, he was able to run prior to this offense, but cannot anymore, and he also cannot stand for long periods of time because his leg gives out on him.

## **THE DEFENDANT'S BACKGROUND**

Despite the fact that the defendant's criminal history is not lengthy compared to other adult offenders, several factors noted in the defendant's pre-trial services report and in the evaluations from St. Elizabeth's, as well as the conduct in each of the three cases before the court, gives the government great concern regarding the defendant's release to the community.

At the time that each of these offenses was committed, the defendant had only one prior adult conviction for Petit Larceny, as well as one prior contact with the criminal justice system, as noted on page 7 of the defendant's pre-sentence report ("PSR"). However, the defendant was arrested and charged with three felony offenses within the span of six months. This escalation in

3

seriousness of offenses, and the defendant's commission of these offenses while on release, causes the government concern as to how the defendant will perform on supervision.

Furthermore, at the time of the defendant's arrest in 2015 CF3 9721 (attempted robbery), his lockup test result was positive for PCP; in the pre-sentence report, the defendant admitted that he "was looking to buy drugs at the time (PCP)." Likewise, in case 2015 CF3 18179 (unlawful entry and theft), the defendant's lockup test result was positive for PCP, and it was also positive for PCP in case 2015 CF2 18183. Beyond that, in giving his statement in the PSR regarding the synthetic cannabinoid case, the defendant stated, "You can do whatever you want in private. I was on a lot of drugs heavy at the time," admitting to using K-2, marijuana, PCP, and alcohol during the course of the week leading up to that offense.

As noted in the pre-sentence report, the defendant's addiction to drugs and alcohol is not a recent development, but started at a very young age when he was still a teenager. The use of synthetics and PCP is particularly concerning because of the significant and at times unpredictable and violent effect these substances can have on an individual. At the very least, these substances significantly impair one's thought processes, as evidenced by the defendant committing multiple offenses in a short period of time, one of which resulted in the defendant being a participant in an offense where the victim was shot. If the defendant's substance abuse is not corrected, he will only continue to make poor decisions while under the influence and his addiction will continue to motivate him to commit crimes to feed that addiction.

███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
████████████████████████████████. While the defense indicates that incarceration will

4

do nothing to improve the defendant's mental health, the defendant poses too great of a risk to public safety and to himself for him to be released with a time served sentence. This is highlighted by the fact that the defendant was charged with yet another crime while being held at the jail: the defendant was charged with assault after throwing what appeared to be a mixture of human feces and urine onto one of the corrections officers. See Gerstein affidavit in case 2016 CMD 18853, attached as Exhibit A. Clearly, the defendant still poses a risk to public safety, even when he is incarcerated. The government notes that mental health treatment and medication would still be available to the defendant at the jail. While the government would prefer that the defendant be housed at a facility like St. Elizabeth's, where he could get improved treatment in a controlled setting, that unfortunately is not an option. Yet the alternative of releasing the defendant to the community with a time-served sentence is not an adequate alternative, given the nature of the defendant's risk to himself and others.

Finally, of most concern to the government are the reports from St. Elizabeth's while the defendant was being housed there for mental health evaluations. The defendant's inappropriate and aggressive sexual behavior should certainly act as a red flag for the court. Rather than a symptom of the defendant's mental illness, ▓▓▓▓ indicated that because the defendant directed his sexually inappropriate behavior towards females and not males, "[the defendant] has the ability to control his sexually inappropriate behavior and engages in it as a means of manipulation." See page 7 of the DBH Report dated August 19, 2016. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Without a controlled environment, the defendant could be at more risk in the community. Acting out through inappropriate sexual conduct may be a preview of behavior to follow the defendant's release into

5

the community, and the government submits that it should be addressed now, so that the defendant can receive treatment or counseling to curb this behavior and prevent future harm to the defendant himself or to another person in the community.

## SUMMARY

Simply releasing the defendant will not provide the court or the community with the assurance that the defendant will not be a threat to public safety. The defendant's mental health issues; addiction to dangerous substances; and his disturbing patterns of behavior while incarcerated and while housed at St. Elizabeth's, all demand a sentence that will not only act as a deterrent, but will help to rehabilitate the defendant so that he no longer reoffends. The government's chief concern is preventing the defendant from harming himself or someone else once he is released back to the community. Thus, the government respectfully requests that the court impose a sentence in 2015 CF3 9721 of 18 months, execution of that sentence suspended as to all but 6 months, with a period of three years supervised release and 18 months of supervised probation. The government also requests a stay away order from ▊▊▊▊▊▊ and the terms of CSOSA's intervention plan as conditions of probation. In case 2015 CF2 18183, the government would request a sentence of 180 days, execution of that sentence suspended as to all but 45 days, with 18 months of supervised probation with drug testing and treatment and mental health treatment as conditions of probation. In case 2015 CF3 18179, the government would request a sentence of 180 days, execution of that sentence suspended as to all but 120 days, with a period of 18 months supervised probation with a stay away from ▊▊▊▊▊▊▊▊▊▊▊▊▊, ▊▊▊ and drug testing and treatment and mental health treatment as additional conditions of probation. In each case, the government would request that the periods of incarceration run

6

consecutively and the periods of supervision run concurrent, and would oppose the Youth Rehabilitation Act, due to the number of cases the defendant has been convicted of and due to the fact that he has already been charged with a new assault case. ███████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████

WHEREFORE, for the foregoing reasons, and any others that may appear to the Court, the United States respectfully requests that the Court impose the Government's requested sentence.

Respectfully submitted,

CHANNING D. PHILLIPS
UNITED STATES ATTORNEY

LISA GREENE
ASSISTANT UNITED STATES ATTORNEY
CHIEF, FELONY MAJOR CRIMES TRIAL SECTION

/s/ *Alysa Kociuruba*
ALYSA KOCIURUBA
ASSISTANT UNITED STATES ATTORNEY
(202) 252-7035

7

**CERTIFICATE OF SERVICE**

I hereby CERTIFY that on November 29, 2016, a copy of the foregoing was sent by email to the defendant's counsel, Mani Golzari, Esq., and Gwenyth O'Neill, Esq.

/s/ *Alysa Kociuruba*
ALYSA KOCIURUBA
ASSISTANT UNITED STATES ATTORNEY
(202) 252-7035

8